# Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510  
New York, New York 10165  
_____

Telephone: (212) 317-1200  
Facsimile: (212) 317-1620

August 29, 2018

**VIA ECF**

Honorable Ronnie Abrams  
United States District Judge  
Thurgood Marshall  
United States Courthouse  
40 Foley Square  
New York, New York 10007

        Re:    Galeana Sanchez et al v. Venky's Food Corp. et al;  
              18-cv-01916-RA

Your Honor,

      This firm represents the Plaintiffs Juventino Galeana Sanchez ("Plaintiff Sanchez") and Victor Galeana Sanchez ("Plaintiff Galeana") (collectively, "Plaintiffs") in the above-referenced matter. Plaintiffs write jointly with Defendant Venky's Food Corp. (d/b/a Om Real Indian Food Restaurant) ("Defendant") to request that the Court approve the settlement agreement ("the Agreement") reached by the parties herein as "fair and reasonable." *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Agreement is attached hereto as **Exhibit A.**

      Plaintiffs have agreed to settle all of their claims in this action on an individual basis. Specifically, the Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of these claims with prejudice against these Defendants, in exchange for consideration as set forth in the Agreement. The Agreement is the result of arms-length bargaining between the Parties that culminated in a Court-Ordered mediation and the acceptance of the Mediator's settlement proposal. The Agreement reflects a desire by the Parties to fully and finally settle and compromise all of Plaintiffs' claims against Defendant asserted in this case as outlined more specifically in the attached Agreement.

      The Parties have concluded that the Agreement is fair, reasonable, adequate, and in the Parties' mutual best interests. For these reasons and based on the reasons set forth below, the Parties jointly and respectfully request that that Court enter an Order approving the settlement as fair and reasonable.

**Background**

      Plaintiffs brought this action seeking to recover unpaid minimum wages, liquidated damages, interest, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 et seq., and the N.Y. Lab. Law § 190 et seq. Plaintiff also sought statutory damages for violations of

Hon. Ronnie Abrams
August 29, 2018

the wage notice and wage statement provisions in New York Labor Law § 195 and sought reimbursement of equipment costs.

Plaintiffs were employed by Defendant as delivery workers. Plaintiff Sanchez alleges that he was employed by Defendant from approximately March 2015 until in or about August 2017, that he typically worked 34 hours per week, and that he was paid $16.00 per day. Plaintiff Galeana alleges that he was employed by Defendant from approximately June 2012 until in or about May 2013 and again from approximately July 2014 until on or about January 26, 2018, that he typically worked 17 to 28 hours per week, and that he was paid $20.00 per day.

Defendant disputes Plaintiffs' hours worked, dates of employment, and rates of pay. Additionally, Defendant provided documentation that it claims evidences that Plaintiffs are not entitled to their full amount of damages sought. Specifically, Defendant claims that it maintained records of each shift worked by Plaintiffs, and that based on such records, which were produced to Plaintiffs in advance of the mediation, Plaintiff Sanchez was employed from February 18, 2013 to June 23, 2013, from August 27, 2015 to April 3, 2016, on April 28, 2017 and on October 27, 2017, and that Plaintiff Galeana was employed by Defendant from August 12, 2012 to May 19, 2013, during 2 total shifts in March 2016, and from September 23, 2016 to January 26, 2018. In addition, due to the limited amount of hours that Defendant is open, Defendant claims that even if Plaintiffs performed work during every second that Defendant was open during every shift they worked (which Defendants deny), the maximum total hours that Plaintiffs could have possibly worked is 15.65 hours per week for Plaintiff Sanchez and 18.27 hours per week for Plaintiff Galeana.

After weighing the risks of trial and costs of further litigation, the parties have reached an agreement at an early stage and agreed to accept the Court-Ordered mediator's settlement proposal.

**Settlement**

The parties have agreed to settle this action for the total sum of Sixty-Five Thousand Dollars and Zero Cents ($65,000.00) which will be paid as outlined in **Exhibit A**. Plaintiffs estimated that, in their best-case scenario, they would be entitled to approximately $54,591.50 in unpaid wages. However, Defendants claim that even if Plaintiffs were to succeed, based on Defendant's record of shifts worked, the maximum potential wages that Plaintiffs could possibly be awarded would be $15,619.45.

Forty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Five Cents ($43,333.35) of the settlement amount will be paid to the Plaintiffs. The remaining Twenty-One Thousand Six Hundred and Sixty-Six Dollars and Sixty Five Cents ($21,666.65) will be applied as attorneys' fees and costs.

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting*

Hon. Ronnie Abrams
August 29, 2018

*Crabtree v. Volkert, Inc.,* 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (*quoting Le v. SITA Info. Networking Computing USA, Inc.,* 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky*, 900 F.Supp.2d at 335 (*quoting Medley v. Am. Cancer Soc.*, No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair and reasonable to all Parties. Plaintiffs have been represented by counsel throughout this lawsuit and have made an informed decision to settle the action at an early stage of litigation, without incurring the costs or encumbrance of lengthy litigation and trial. As described above, Plaintiffs' claims are heavily disputed by Defendant. Settlement at this stage avoids the need for costly trial and was made only after Defendant produced 255 pages of documents to Plaintiff. Furthermore, the settlement agreement is the product of arm's-length bargaining between counsel with the assistance of a Court-Ordered mediator. In fact, it was this Court-Ordered Mediator who issued a mediator's proposal to settle this matter for $65,000.00, which was ultimately accepted by each party. That the settlement amount is a mediator's proposal, provides further evidence of the fairness of the settlement.

In the Settlement Agreement, the parties agreed to include a mutual non-disparagement provision and mutual confidentiality provision that applied to Plaintiffs and Defendant's owner, Subhash Chilka. Such provisions are fair and reasonable in light of their limited nature. Specifically, the mutual non-disparagement provision includes an exception to truthful statements about experience litigating the action, about Plaintiff's claims in the action, and about the resolution of the action. The mutual confidentiality provision does not apply to any terms of the settlement agreement related to the payment of wages.

Lastly, the Settlement Agreement includes a mutual release of all claims by Plaintiffs, Defendant, and Defendant's owner, Mr. Chilka. Numerous cases have held that a mutual general release is acceptable in a matter such as this. *See e.g. Souza v 65 St. Marks Bistro*, 2015 U.S. Dist. LEXIS 151144 (S.D.N.Y. 2015) (approving of mutual General Release "will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes…This result is consistent with the goals of a fair and just settlement."); *Cionca v. Interactive Realty LLC*, 2016 U.S. Dist. LEXIS 77372, 11 (S.D.N.Y. 2016) (approving a general mutual release as fair and reasonable where plaintiff is no longer an employee of the defendants). Accordingly, the Parties respectfully request that the attached settlement agreement be approved as fair and reasonable.

**Plaintiffs' Attorneys' Fees are Fair and Reasonable**

Hon. Ronnie Abrams
August 29, 2018

Under the settlement, Plaintiffs' counsel will receive $21,666.65 of the $65,000.00 total settlement amount as attorneys' fees and costs. This represents approximately one third of the recovery in this litigation, a reduction in fees from what is identified in Plaintiffs' retainer agreement, which provides that forty percent of Plaintiffs' recovery will be retained by the firm.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable.

Given Plaintiffs' counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain a favorable pre-trial result due to the Parties' cooperative exchange of information and negotiations. A brief biography of each attorney who performed billed work in this matter is as follows:

- Michael Faillace: Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. His work is billed at $450.00 per hour. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. His work is billed at the rate of $450 per hour and indicated by the initials "MF."
- Haleigh Amant is an associate at Michael Faillace & Associates, P.C. Since graduating law school in 2017 from the George Washington University Law school, she has been practicing strictly employment law and representing employees in wage and hour disputes. Her work is billed at $250.00 per hour and indicated by the initials "HA."

The lodestar amount for Plaintiffs' attorneys' fees is $6,069.00. A copy of Plaintiffs' attorneys' billing records is annexed hereto as **Exhibit B**. It is fair and reasonable for Plaintiffs' attorneys to receive one-third of the total settlement amount. Plaintiffs' attorneys and their staff will still have to devote additional time to this matter after the Court approves the settlement, including administering the settlement, and addressing non-payment in the unlikely event Defendant fails to make timely payment of the settlement amount. Moreover, reducing the amount of the settlement that goes to Plaintiffs' attorneys would be poor public policy, as it would remove an incentive for attorneys for plaintiffs in contingency fee FLSA cases from seeking to obtain the highest possible settlement amount. It also would create a disincentive to early settlement, and instead create an incentive for plaintiffs' attorneys to unnecessarily increase the amount of time they, their adversaries, and the court spend on actions that can be resolved. *See Hyun v. Ippudo USA Holdings*, 2016 U.S. Dist. LEXIS 39115, *7 (S.D.N.Y. March 24, 2016) ("the Court finds

Hon. Ronnie Abrams
August 29, 2018

that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement,' is appropriate")(quoting *McDaniel v. City of* Schenectady, 595 F.3d 411, 418 (2d Cir. 2010)).  Among other things, it could create an incentive for attorneys in FLSA cases to make only minimal efforts to settle cases before settlement conferences, in order to add to their billable fees.  This would be an outcome that disserves the plaintiffs, the defendants, and the Court.

The requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and Plaintiffs have agreed to these fees and costs by agreeing to the settlement amount.  As a result, the fees should be approved.  However, should the Court disagree and find it necessary to reduce the portion of the settlement amount to be applied to Plaintiffs' attorneys from that proposed herein, the parties and Plaintiffs' attorneys respectfully request that the Court approve the settlement agreement with the maximum distribution from the settlement amount to Plaintiffs' attorneys that the Court deems appropriate.

**Conclusion**

Plaintiffs have been represented by counsel throughout this lawsuit, this settlement was reached with the assistance of a Court-Ordered mediator and Plaintiffs' counsel has agreed to the settlement amount after obtaining approval of his clients.  Plaintiffs' interests have thus been adequately safeguarded.

In full consideration of the issues presented in *Cheeks,* we believe that the parties' agreement is fair and reasonable, and that the settlement should be approved.  A Stipulation of Final Dismissal will be filed for so-ordering upon receipt of confirmation from the Court that the settlement has been approved.

Thank you for your consideration in this matter.

                                                    Respectfully Submitted,

                                                    /s/ Michael Faillace
                                                    Michael Faillace, Esq.
                                                    Michael Faillace & Associates, P.C.
                                                    *Attorneys for Plaintiffs*

cc:    Keith Jason Gutstein (via ECF)
          Matthew Eric Cohen (via ECF)
          *Attorneys for Defendant Venky's*
          *Food Corp. (d/b/a Om Real Indian*
          *Food Restaurant)*